UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD LOPEZ,<br>Plaintiff,<br>v.<br>HOLLER, et al.,<br>Defendants. | Case No. 18-cv-04387-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 25 |

## INTRODUCTION

Plaintiff Edward Lopez alleges in this 42 U.S.C. § 1983 suit that his jailors at Pelican Bay State Prison violated his constitutional right to due process by depriving him of a beard trimmer for 14 months. To the extent Lopez has such a right to a beard trimmer, which I do not reach, he received any process he was due. And defendants certainly would be entitled to qualified immunity. Defendants' motion for summary judgment is GRANTED.

## DISCUSSION

### I. Background

The allegations in the following factual summary are undisputed, unless specifically noted otherwise. In September 2017, Lopez, an inmate at Pelican Bay, ordered an electric beard trimmer from an approved vendor; it arrived at the prison in October 2017. (Compl.,

Dkt. No. 1 at 6.) When Lopez went to pick it up, defendant Holler, a prison guard, told him "these trimmers are not allowed" and that the item had been sent back to the vendor. (*Id.*; Mot. for Summ. J. (MSJ), Dkt. No. 25 at 7.)

Holler was following Pelican Bay's policy. Although electric hair trimmers were generally allowed at CDCR institutions per the CDCR's Authorized Personal Property Schedule, Pelican Bay had formally disallowed them and had sought approval from the CDCR for this disallowance. (MSJ, Dkt. No. 25 at 8.) (*Id.* at 8-9.) From October 2017 to December 2018, Pelican Bay identified electric hair trimmers as an "item exempt" from the CDCR's authorized list or in the "exemption process." (*Id.* at 9.)

Lopez filed a grievance. At the first level of review, interviewer (and defendant) Sergeant B. Chaucer showed Lopez a May 2013 memorandum from associate director K. Harrington disallowing beard trimmers at Pelican Bay. (MSJ, Dkt. No. 25 at 7-8; Pl.'s Opp. (Opp.), Dkt. No. 34 at 7.) Lopez's first-level grievance was denied.[1] (MSJ at 7-8.) The second-level grievance reviewer cited Pelican Bay's Authorized Personal Property Schedules. (*Id.* 8.) This document identified hair trimmers as exempt (or in the exemption process) from the allowed property list. (*Id.*) The grievance was denied at the second level.[2] (*Id.*)

The third-level reviewer saw matters differently. In June 2018, he ordered Pelican Bay to comply with the CDCR's April 2014 Authorized Personal Property Schedule, which allows inmates to possess electric hair trimmers. (*Id.*) The examiner noted that while prisons may request that certain items be exempted from the approved list, they were not allowed to implement the exemption until CDCR had approved the requested property restriction. (*Id.*) Because Pelican Bay's request had not been approved, the examiner

---

[1] The first-level grievance was partially granted because Lopez was given an explanation why the trimmer was disallowed. (MSJ, Dkt. No. 25 at 7.) The first-level reviewers were defendants Captain Love and Associate Warden Barneburg. (*Id.*)

[2] The second-level grievance was denied, "concurring with the first level decision to partially grant Lopez's appeal on all issues except to allow purchase of the trimmer." (MSJ, Dkt. No. 25 at 8.) Defendant (and Chief Deputy Warden) Bradbury "prepared and signed the second level review," acting on behalf of Acting Warden Robertson. (*Id.*)

2

directed the prison to abide by the CDCR's authorized property list. (*Id.*)

After the final examiner's decision issued, Pelican Bay asked the CDCR for additional time (until October 2018) to "assess and review additional information" regarding the Authorized Personal Property Schedules. (*Id.* at 9.) In December 2018, Pelican Bay's policies were revised to allow inmates to possess hair trimmers. (*Id.*) In November 2018, Lopez ordered another trimmer and took possession of it in December 2018. (*Id.*)

Lopez filed this § 1983 suit in response to the 14-month denial of a trimmer. In his complaint, he contends the disallowance was wrongful: his jailors failed to comply with state requirements for disallowing the trimmer. He names as defendants K. Harrington, an assistant director of Pelican Bay employees, who approved the memorandum disallowing trimmers[3]; J. Robertson, acting warden, whose involvement in this matter is slight[4]; D. Barneburg, associate warden, the first-level reviewer and decision-maker; D. Bradbury, chief deputy warden, the second-level reviewer and decision-maker; and correctional officers D. Love, a first-level reviewer and decision-maker; B. Chaucer, who interviewed Lopez for the first-level grievance review; and C. Holler, who signed the property disposition form in October 2017.

---

[3] Defendants say that Harrington was "the person to whom Pelican Bay officials sent their May 31, 2013 Request for Approval to Disallow Beard Trimmers to." (MSJ, Dkt. No. 25 at 9.) They say Harrington did not himself sign the approval, but rather a representative signed on his behalf. (*Id.* at 9-10.)

[4] Robertson was not working at Pelican Bay in October 2017 when Lopez was denied his trimmer — which is perhaps the reason Robertson was not listed in Lopez's prison grievance. (MSJ, Dkt. No. 25 at 10; Compl., Dkt. No. 1 at 14-17.) Robertson had no involvement in promulgating the trimmer policy nor in its implementation. His only participation in the relevant events was to ask (i) the CDCR's Office of Policy Standardization "for an update on previously granted exemptions to the Authorized Personal Property Schedules"; and (ii) the CDCR for additional time to asses and review additional information on the property schedules. (MSJ, Dkt. No. 25 at 10.) He is the ostensible second-level reviewer (his typed name appears beneath the signature on the grievance review decision), but Bradbury "prepared and signed the second level review," acting on behalf of Robertson. (*Id.* at 8.)

3

## II. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## III. Claims

The first question to answer in defendants' motion is whether Lopez was owed due process. If he was not, any deprivation did not constitute a violation of his federal rights

4

1    and his suit fails. If he was, the question is what sort of process he was owed and whether
2    he received it.
3           Whether Lopez was owed due process is unclear. The Supreme Court case has held
4    that a prisoner is entitled to procedural due process only if the restraint on his liberty
5    "imposes atypical and significant hardship on the inmate in relation to the ordinary
6    incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the
7    Supreme Court rejected a prisoner's contention that his 30-day placement in administrative
8    segregation violated this due process standard. If *Sandin* applies, the deprivation of a
9    beard trimmer does certainly not impose an "atypical and significant hardship in relation to
10   the ordinary incidents of prison life."
11          It is not clear that *Sandin* applies to a prisoner's due process property claims; the
12   circuit courts are not in agreement and the Ninth Circuit has not declared a position on the
13   issue.[5] Many California federal district courts, however, have held that *Sandin* applies to
14   such claims. *See, e.g., Shallowhorn v. Gonzalez*, No. 1:11-cv-00305-GBC (PC), 2012 WL
15   1551342 at *5-*6 (E.D. Cal. Apr. 30, 2012) (temporary deprivation of property does not
16   pose an atypical and significant hardship when compared to the ordinary incidents of
17   prison life); *Eaves v. Castro*, , No. 1:09-cv-01647-GBC PC, 2011 WL 220017 at *3 (E.D.
18   Cal. Jan. 24, 2011) (deprivation of property does not pose an atypical and significant
19   hardship); *Vogelsang v. Tilton*, No. CIV S-06-2083 JAM DAD P, 2008 WL 4891213 at *4
20   (E.D. Cal. Nov. 12, 2008) (restriction on number of appliances a prison could keep in his

---

[5] *Cf. Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (extending *Sandin*'s atypical-and-significant-deprivation methodology to property claims by prisoners), and *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996) (suggesting that *Sandin* applies to property interest claims brought by prisoners) with *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir.1995) (declining to extend *Sandin*'s methodology to property interest claims by prisoners).

The Ninth Circuit appears to have sided with the Fifth Circuit in an unpublished opinion, *see Martin v. Upchurch*, 67 F.3d 307 (9th Cir. 1995) (unpublished disposition), but unpublished opinions by the Ninth Circuit at the time of the *Martin* decision have no precedential effect. *See* 9th Cir. R. 36-3. *But cf. Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (noting, <u>without</u> reference to *Sandin*, that state prisoner's interest in funds in his prison account is protected liberty interest of which he may not be deprived without adequate process).

cell did not impose an atypical or significant hardship); *Martin v. Hurtado*, No. 07cv0598 BTM (RBB), 2008 WL 4145683 at *13 (deprivation of television did not pose an atypical or significant hardship); *Owens v. Ayers*, No. C 01-3720 SI (PR), 2002 WL 73226 at *2 (N.D. Cal. Jan. 15, 2002) (three-month deprivation of property does not impose an atypical and significant hardship).

Regardless of *Sandin,* it is not clear that Lopez had a property interest in the trimmer. Property interests that are protected by the due process clause exist, or fail to exist, according to state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). To assert such an interest, there must be a "legitimate claim of entitlement to it." *Id.* Under California law a prisoner "does not have a general right to possess property in prison." *Schrubb v. Tilton*, No. C-08-2986 TEH (PR), 2014 WL 4129577, at *5 (N.D. Cal. Aug. 21, 2014). Whether a due process property interest exists or fails to exist under state law, Lopez likely never had such an interest even if the CDCR allowed him to purchase and own a trimmer: "An inmate's right to inherit, own, sell or convey real and/or personal property does not include the right to possess such property within the institutions/facilities of the department." 15 Cal. Code Regs. § 3192.

All that said, there is an argument that Lopez had some property interest in the trimmer. Violating CDCR regulation, Pelican Bay disallowed the trimmer. For purposes of this order only, I will assume without deciding that the CDCR's authorized property list gave Lopez a right to possess the trimmer and that he could not be deprived of it without due process.

If Lopez was owed process, he received it.[6] He was notified that the trimmer had

---

[6] Lopez contends at times that because the CDCR allowed trimmers, defendants at Pelican Bay acted without authorization. This sort of allegation does not aid plaintiff. Neither the negligent nor intentional deprivation of property states a claim under § 1983 if the deprivation was random and unauthorized. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981). The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient process. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990). California law provides an adequate post-deprivation remedy for any property deprivations. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). If the deprivation was unauthorized, the suit would be dismissed without prejudice to plaintiff pursuing relief in the state courts.

6

been withheld, and he had the opportunity, through the prison grievance system, to challenge the decision. Indeed, his due process rights were ultimately vindicated and he was allowed to possess a trimmer.

Even though a pre-deprivation process is often preferable, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978), a pre-deprivation hearing will not always be in order.[7] "The necessity of quick action by the State or the impracticability of any pre-deprivation process" are important considerations. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981). "[W]here the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination, government may act without providing additional 'advance procedural safeguards.'" *Memphis Light*, 436 U.S. at 19 (quoting *Ingraham v. Wright*, 430 U.S. 651, 680 (1977).

This is not an instance in which a pre-deprivation hearing was appropriate. It makes little sense to allow a prisoner to possess an item considered dangerous contraband before instituting proceedings to deprive him of it. What makes more sense in terms of prison security is to deprive Lopez of the trimmer and then allow him to contest the deprivation. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Furthermore, any due process violation was cured by the final reviewer's granting of Lopez's grievance and his directions to Pelican Bay to allow Lopez to possess the

---

[7] Pre-deprivation process seems to be favored when there is a "significant property interest." *Memphis Light*, 436 U.S. at 19. In *Memphis Light*, it was adjudged that the deprivation of gas and electricity by municipal utility company required pre-deprivation hearing because "the cessation of essential services for any appreciable time works a uniquely final deprivation." *Id.* The same cannot be said about the deprivation of a beard trimmer.

7

trimmer. "Where a procedural error has been corrected in the administrative process . . . there has been no compensable due process violation. The administrative appeal is considered part of the process afforded, and any error in the process can be corrected during that appeals process without necessarily subjecting prison officials to liability for procedural violations at lower levels." *Torricellas v. Poole*, 954 F. Supp. 1405, 1414 (C.D. Cal. 1997), aff'd, 141 F.3d 1179 (9th Cir. 1998). *See Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) ("The district court properly granted summary judgment on Frank's due process claim because, as our sister circuits have recognized, any procedural error was corrected through the administrative appeal process, and Frank ultimately did not lose any good time credits."); *Wycoff v. Nichols*, 94 F.3d 1187, 1189 (8th Cir. 1996) ("[T]he [administrative] reversal of the case against Wycoff constituted part of the due process Wycoff received, and it cured the alleged due process violation based on the [prison] disciplinary committee's initial decision to sanction Wycoff."); *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (per curiam) ("There is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process. The administrative appeal process is part of the due process afforded prisoners." (citation omitted)); *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (per curiam) ("[W]e need not decide whether Young suffered a denial of due process in connection with his disciplinary hearing, because . . . [t]he administrative reversal constituted part of the due process protection he received, and it cured any procedural defect that may have occurred.").

The claims against Harrington also fail on the grounds that his liability has not been established. Supervisory officials can be held liable if the policy they issued is so deficient that the policy "itself is a repudiation of constitutional rights." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)). Prison officials are entitled by state law to ask for exemptions from the CDCR's list of permissible items and there is in fact a process through which such requests proceed. There is nothing in the record showing that issuing a ban on certain items while that

8

process proceeds is a "repudiation of constitutional rights."

The record reflects that the decision concerning the beard trimmer was made to preserve institutional and inmate safety. The Supreme Court has held that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 547. "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* "[Prison practices] must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* Because "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions," prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.*

For all of these reasons, plaintiff's claim fails.

## IV. Qualified Immunity

Finally, if Lopez had a due process right and that right was violated (and not cured by the administrative process), defendants would be entitled to qualified immunity.

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201.

9

The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Even if the violated right is clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* at 205.

Defendants are entitled to qualified immunity because it would not have been clear to a reasonable officer that his conduct was unlawful. Pelican Bay had banned beard trimmers. This ban was known to all involved in the deprivation and all conformed their behavior accordingly. There is nothing constitutionally offensive on the face of the ban. It is known and expected that prisons intimately govern everything a prisoner can do and possess. Defendants reasonably assumed that the ban was constitutional. When each person approved the deprivation (or acted to deprive), he was acting on instructions that the trimmer was contraband. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.

Harrington's disallowance of an item he regarded as contraband during the time Pelican Bay sought to have trimmers disallowed is also protected by qualified immunity. Even if the violated right is clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau*, 543 U.S. at 198.

10

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in favor of all defendants. (Dkt. No. 25.) The Clerk shall terminate all pending motions, enter judgment in favor of all defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:** March 23, 2020



WILLIAM H. ORRICK
United States District Judge